We only have two. First case is Hebronville Lone Star Rentals et al. v. Sunbelt Rentals Industrial Services, LLC. We'll hear first from Ms. Weber. May it please the Court, I'm Jane Weber representing Sunbelt. What happened in this case is the district court determined that the arbitrator did not have contractual authority to reform the party's contract as part of resolving the party's dispute involving calculation of the first contingent payment. And I think there are two issues that illustrate the district court's error in arriving at that conclusion, one practical and the other sort of jurisprudential. And the jurisprudential issue involves the presumption in favor of arbitration. And the presumption goes like this, that a court is to construe a contractual arbitration clause, construe it as encompassing arbitrability unless it can be said with positive assurance that there is no reasonable interpretation, no available interpretation that would encompass the issue. And if that presumption in favor of arbitration is to be anything other than a platitude, this is the sort of case where it ought to apply, because there were a number of instances where the district court, the R&R, favored. The other side of the coin is if you read it that broadly, then everything is submitted to the arbitrator. And the difficulty with reading that in an extreme form, that they're fully applied, is what happens, you can't then, the parties cannot then define the scope of the arbitration very well. Well, Your Honor, if they agree, the agreement is assertedly simply to resolve this particular dispute that they have, which is the amount of money and where they've tripped the threshold requirements. Well, Your Honor, what we have here are instances not where there's a, oh, everything in the world should come within this arbitration, the presumption would sweep in every dispute the parties might possibly have. But what we have here is a series of specific analyses by the district court of taking specific provisions within the engagement letter or within the APA and assigning weight, leaning away from arbitration, assigning weight to an inference against arbitration when there is available a reasonable inference in favor of arbitration. But your proposal is to arbitrate the legal issue here of mutual mistake. Yes, Your Honor. Yes, Your Honor. The parties contemplated arbitrating legal issues in several ways. For example, and here's another way where the R&R leaned against. The engagement letter says specifically that the arbitrator has the right, has the contractual right to retain legal counsel in order to advise him. That indicates that the parties contemplated and agreed that the arbitrator would sometimes possibly face resolution of legal issues as part of the arbitration as a whole. They agreed to that. The R&R swept that away, said, no, no, no, the hiring of an attorney just goes to the question of waiver over whether Lone Star waived the question of arbitrability, and we're not contending that they waived it. Well, it is a reasonable inference that the parties contemplated resolution of legal issues by the arbitrator, and yet contrary to the presumption, the district court leaned away instead of leaning in favor. So that's a specific example. In the series of forks that a court takes in construing an agreement, you take this clause, this provision, and what is the inference arising from it, and again and again and again the district court's inference went against arbitrability. Well, it's ultimately a question of contract, and looking at Section 3.5, it says they agreed to arbitrate with an accounting firm to resolve any remaining dispute over Seller's proposed adjustments. I mean, it's really the Seller makes this proposed adjustment to the numbers, and it seems that's all that's being arbitrated under 3.5, and there's some other arbitration sections. But how does reformation of a contract get in — fall under the rubric of a dispute over the Seller's proposed adjustment? Here's how it gets there, Your Honor, and this leads to my practical issue. So 3.5c is not the only controlling language regarding the scope of arbitration because there's the engagement letter. And the law says that the parties can change, can broaden, can narrow, can change the scope of arbitrability through something like an engagement letter. And whether or not this Court believes — So your better argument is the engagement letter? Well, Your Honor, I think what the engagement letter does, whether or not it is broader than 3.5c, it's certainly more explicit regarding what the precise issue that the parties were presenting for arbitration. Because this is what was drafted after the actual dispute arose, when there was the calculation and then the proposed adjustment to the calculation, and we knew where the horse was buried and what the parties were actually disputing. And when they sat down to define the scope of arbitration to address their specific dispute that was at issue, in that language, they did two things. Well, as I read, the engagement letter provides that the arbitrator, quote, understands, pursuant to 3.5, following your line that this is implementing that earlier agreement, the parties are submitting to the arbitrator for resolution their disagreement as to whether their threshold amount for the first contingent payment period has been met, and if the threshold amount has been met, the amount. That's what I — that's the language of it. Yes, Your Honor, and that language is significant in two ways. First, they use different words, different terms. They did not use the defined terms from the APA. They say threshold amount, lowercase t, lowercase a, threshold amount, not the defined term contingent payment threshold. Did they mean something different? Second, can it be said with positive assurance that there is not any interpretation of that language that the parties meant to depart in some way from the defined terms? But also, second, what the parties did was give the arbitrator two specific terms. What you have here, to me, is the parties, they have a threshold agreement to arbitrate. And then to implement that, they engage in an accounting firm. And the accounting firm has set up a whole business operation, or there's a whole operation of arbitration. And you have a boilerplate agreement that runs about six or eight pages covering everything, covering your right hand, your left hand, and everything else, et cetera, et cetera, et cetera. Now, if that is going to be the controlling, ultimately control what the original arbitration agreement was, then when they sign on with these accounting firms to do that, then it's Katie bar the door, because that language is as expansive. It covers the arbitrator's tracks in every way possible. I mean, I'm not being critical of it. I'm just saying it is a very, very detailed blanket coverage of the arbitration agreement, quote, unquote. I submit that the operative paragraph in the engagement letter is emphatically not boilerplate language. This is language that is precisely tailored to the specific description. Well, that one may be one of the rest of it. But you didn't – that contract, I submit to you, I just – it read to me as if an awful lot of that language, an awful lot of that language is what you use as a standard thing. You've developed it over time, and the experience tells you you need these protections. Now, you may have some paragraphs in there that are tailored to this one, but – Well, Your Honor, it's boilerplate or not, this is the contract that the parties agreed to. I understand that. This is the contract they signed, and this paragraph, this emphatically not boilerplate paragraph defines the scope, and it does – it departs from the language, from the construct of the APA 3.5C in a very specific way that I think is significant, extraordinarily significant to this appeal, and that is it gives the arbitrator two different jobs to decide two different things. First, to resolve their disagreement as to whether the threshold amount for the first contingent payment has been met, and – and this is what is so critical – second, if the threshold amount has been met, the amount of the first contingent payment, the arbitrator is given the explicit portfolio of deciding the dollar amount of the first contingent payment. Now, to decide that dollar amount – and that is not – calculating the first contingent payment is not explicit in 3.5C. It is not explicit. Well, look – And that's a departure, Judge Costa, from – from the precise language you were referring to earlier. Well, Section 9.10 provides for litigation to resolve all disputes except for those set forth in Sections 3.3, 3.4, 3.5, and 3.6, and each of those exceptions provide for arbitration by their firm over a proposed adjustment to formal calculations. And 3.5 refers to the revenue calculation. That's a – The – the – Your Honor, the forum selection clause – and that's another example of the – of the district court erring in leaning away from arbitrability when they're supposed to lean in favor of it. That's a forum selection clause, Your Honor. And the – the district court characterized it as a default dispute resolution clause. Well, that's just saying we're going to submit to – to jurisdiction in Texas if there's any litigation. And can it be said with positive assurance that 9.10 is not susceptible of any interpretation as a plain, vanilla forum selection clause? But let me talk for a second about – I want to go back, before you move on too much, to the point you made on the engagement letter. Your – it seems like you're hanging your hat on the second part that says if the threshold amount has been met, the amount of the payment can be calculated. But it says if the threshold amount has been met, and so it doesn't say you can change what the threshold amount is, which is basically what the arbitrator did through a mistake analysis. Well, here's – here's how that all works together, Your Honor. In order to calculate the amount of the first contingent payment, you need to know two things. You need to know the contingent threshold amount, and you need to know the revenue calculation. You need to know those two things in order to do the math, because it's not just – and you need to know the precise dollar amount, because the contingent payment isn't just yes or no, because there's a – there's a point at which you have to – the percentage is – so you've got to know the precise dollar amount in order to calculate – do that calculation of the payment owed. And at the time that the parties agreed to this, the question of mutual mistake was already at issue, and the potential for reformation was already at issue. And the parties' correspondence leading up to this at page 736 of the record in correspondence as part of the – you know, the revenue calculation and my adjustments to it, they already have raised the issue, hey, you can't reform the threshold. But in order to do the calculation of the first contingent payment, under the district court's ruling, what happens is the parties go to arbitration, and they resolve the issue. The arbitrator resolves the issue of the revenue calculation. What about the COG entity? What about BHP? What about PetroHawk? Resolves that, the revenue calculation. And then it goes to court, and you have a trial or whatever. You litigate the issue of mutual mistake because we have raised that. We are entitled to litigate it. It's going to be resolved whether in court or whether in arbitration. It is – we are entitled to have that resolved, but that has to be resolved before the arbitrator can do the calculation, the amount of the first contingent payment, which is explicit in this engagement agreement. So under the judgment as it stands right now, arbitrator decides revenue calculation. Then we go to court, and we litigate mutual mistake and whether or not reformation is appropriate. So now we know what the contingent threshold amount is. Then you go back to the arbitrator to do this calculation. Well, the calculation, once you have those two other numbers, I mean, my 12-year-old could do it. You're right, Your Honor, except that the parties – You don't have to go back to the accounting firm. I mean – Well, you don't have to go back to the accounting firm, but by putting this here, explicitly saying that the arbitrator is going to do that math, what that does is it bakes in – it bakes in the determination of what is the contingent threshold amount because that is necessarily a part of the express determination that the arbitrator was given, and it makes no sense for it to be resolved in a ping-pong way like that. If you say, oh, we've already resolved these two things. Let's just let the judge do it. Well, the parties contracted to let the arbitrator do it. So as a practical matter, the – and yes, it's true that the law allows that sometimes by the parties' agreement, some claims may go to arbitration and related claims remain in court, but that's not what we have here. We have a single claim, a single claim that is teased apart and one component part of it to be resolved in arbitration, another component part of it to be resolved in court, and that makes no sense. Well, it's interesting how the parties contract to get away from the court to get this expeditious way of proceeding. Here we are in a court of appeals arguing a legal question which would have been resolved in the United States District Court or appropriate state court. Quickly, just an interesting development in arbitration. May it please the Court. Let me just say we've handed up to the Court simply. You're Mr. Ratliff? Yes, I'm Mr. Ratliff. Excuse me. Good. We've handed up to the Court a handout that just highlights the jurisdiction clause and the carve-out language, and I would say that if you look at this and read it all together, what is very clear is these parties opted for almost all disputes to litigate those in public, in a trial, with all of the pertinences of a trial. What they accepted were four issues, all of which involved reconciling positions regarding accounting between what Lone Star said and disputed and then what the position on that particular adjustment was by Sunbelt. If you read the arbitration clause carefully, what puts something in issue is when Lone Star disputes the way that it has been, disputes the calculation that's been provided by Sunbelt. That's what happened here. Lone Star said to Sunbelt, no, wait a minute. You have not properly calculated revenues during the contingent payment period for OGC because you took out one that had a comma in it, same mailing address, same everything else, but you treated that as being excluded. So they attacked that. They attacked the fact that during the time of the business events, PetroHawk had been acquired by BHP. BHP was not a common customer. PetroHawk was, and the agreement specifically provides for what happens when there is an acquisition, a merger, or some other change in corporate form. Those were the issues that were teed up, and you don't have to ever look at how the threshold was calculated in order to resolve those two issues. You can resolve them and say, as the arbitrator did here, he found that the OGC entities should be treated as a single entity. He also found that certain of the revenues of PetroHawk were properly revenues that went into the calculations under the agreement, and so he did something that accountants do quite often. He allocated between what got counted and what didn't. He completed his job at that point, but then he made the mistake of trying to dispense his own form of justice by saying, now I'm going to go into the issue of reformation. Now, this record is clear that when the arbitration began, the two initial statements submitted by both sides were submitted simultaneously. It was at that time that Lone Star determined, my goodness, they're trying to claim reformation here. That was a claim that Lone Star had never raised. So it was not an issue until the filing of the dueling papers, and we submit that it never should have been an issue. Now, when you look at the jurisdiction clause here, I know that the State Judicial Council writes it off as a plain, vanilla form selection clause. I would submit to you it carries a much heavier load than that. It specifically says that every dispute arising out of or relating to this agreement, the kind of broad language you often see in arbitration clauses. This is in the district court jurisdiction clause. All of those disputes are going to be decided in court except for 3.3, 3.4, 3.5, and 3.6. And if you look at those four sections, they all relate to issues which are within the particular confidence of an accountant. Now, we've cited cases that say, as the district court did, that the selection of an accountant may be something that ought to be considered in the question of what is the overall intent of the parties as expressed within the four corners of the document. And I will be candid with you. There are courts that say that doesn't really make any difference whether you select an accountant or not. But the fact is that this agreement describes in the exceptions things that are within the particular confidence of an accountant. So what about her argument that the ñ I took her to be more focusing on the engagement letter and saying that in allowing the ultimate calculation by the accounting firm, that encompasses figuring out what the threshold amount should be. I don't quite understand that in view of the fact that to determine that, to make that determination, the fact of the matter is all the accountant has to do is look at what they found with regard to the disputed items from Lone Star and apply it to the defined term threshold amount in the agreement. He doesn't have to do any calculations with regard to the threshold amount. I would also say that every time in this agreement that it talks about the first section 3.5. So I don't believe that there is any implication that the parties are going to submit a totally different issue, a totally different issue, by simply saying he'll determine the amount. That amount can be determined without ever examining the contingent payment threshold. So I believe that that argument won't carry the weight that I think counsel assigns to it. Basically, if you get down to it, what they basically are arguing is two things. The presumption of arbitrability. We don't disagree. There clearly was an agreement to arbitrate certain defined items, and therefore the presumption kicks in. But as the Supreme Court and this court have often made the point, that presumption cannot go against the plain meaning of the terms in the agreement. And here I think that the plain terms here clearly indicate the parties wanted this account to deal with four areas and no other, nothing else. And there is nothing in the engagement letter that would indicate that the parties decided to broaden that charge. There is nothing in that engagement letter that says, and in doing that calculation, you will determine the contingent payment threshold for the first period. If they were going to do that to enlarge his power, it seems to me they would have clearly done it expressly, and I do not believe the presumption can carry the day when you're dealing with the engagement letter. I think the argument that, well, he didn't capitalize the threshold amount that they make is really beside the point. I don't think that a matter of capitalization should decide that I've given up my right to go to court and I'm going to submit it to the arbitrator. And the fact of the matter is, as we point out in our brief, there are other terms that are not defined that he didn't capitalize. So it seems to me what this boils down to, and I agree with you, Judge Gusta, I think they pretty well have gone to the engagement letter as being what might save their argument. But here, this agreement, had the accountant not misapplied it, would operate exactly the way that the parties intended it if you read it from the face of the agreement. And that is the determination he made with regard to the amounts that should be included in the revenues, that ought to stand. Now, we'll go back to the district court and we'll litigate this issue of whether there was mutual mistake within Texas law. And while you might argue about, well, it's kind of wasteful, I think the cases have made it clear, if that's the party's choice, this is a matter of contract. And if that's the way the parties want to contract, we're not going to second, yes, that agreement. So if the court has other questions you'd like to ask, I'll be happy to answer them. But I think the clear answer is these parties contracted to litigate everything but these four accounting issues in court, and that right ought to be preserved. And the district court properly did preserve it. Thank you. Thank you, sir. May it please the court. I think perhaps one good way to illustrate the practical error of the district court's decision in the actual relationship between the parties is to imagine what if the arbitrator had resolved the revenue calculation issue and then had not addressed the contingent payment threshold sum at all, not addressed mutual mistake at all, but left that in place and had done the second part of his authority and had calculated the amount of the first contingent payment and issued an award based on that calculation. What would Sunbelt's remedy have been? How could we have litigated mutual mistake at that point? We couldn't argue that it was beyond the scope of the arbitrator's authority because he would be doing the narrow scope. We couldn't say that there was manifest disregard for the law because he would have calculated the revenue calculation appropriately. And yet under that scenario, the very real right to litigate the contractual offense of mutual mistake and seek the remedy of contract reformation would have been denied us. If the arbitrator has already issued an award that according to the contract is binding on the parties, how are we to seek redress of that? The only way to seek redress to litigate our issue, and just as an aside, contract  It is a remedy. It is a remedy for mutual mistake as part of this. Let me ask you about your reading of the engagement letter and all the way you're putting on the calculation of the contingent payment. Could your client have argued in the arbitration that the entire contract was invalid, maybe for fraud in the inducement or unconscionability? Because by your argument, rendering the whole contract invalid would mean there's no contingent payment due. So it would be part of that determination. Do you think it goes that far? No, Your Honor. Here's why. The contract contemplates the arbitration process happening as part of the here's my calculation of the revenue calculation. Here are my revisions to it. I don't agree. Let's go to arbitration. So the way the process is initiated and the narrow subject matter of it cabins the scope of what is potentially on the table for arbitration. It naturally does so. It's only going to be a part of these calculations, and mutual mistake is directly a part of those calculations because the question is mismatched. It could have been if COG was not part of the front end, it shouldn't be part of the back end. That was the dispute. It could have been that it got left off the back end. Then we would have apples to apples. Instead, the arbitrator said, no, no, we'll put it in at the front end, and then we got oranges to oranges. The fact that the arbitrator chose the remedy of reformation at the front end  within the arbitrator's authority in resolving the threshold amount and whether it's been met, what is the calculation? And he did not administer his own form of justice. He resolved the actual dispute that was presented between the parties. And I disagree with Mr. Ratliff that the first time that reformation came up was in the party's first filings in the arbitration process. At page 736 of the record, in the correspondence, the precise correspondence of here's my revenue calculation, here are my revisions to it, that, in that context of that defining what the disputes are, Lone Star's counsel raised, or Lone Star's representative raised the question of reformation. Didn't use the word reformation, but spoke in terms of changing the contingent threshold amount as part of this dispute. There is no provision for manipulating the threshold number a year after the APA was finalized. So even before they engaged the arbitrator and entered into this engagement letter, the parties were contemplating, were disputing, do we need to have a change in the contingent threshold amount? They contracted to allow the arbitrator to decide that, and we asked the court to order and undo the vacater. Thank you, sir.